JAMES F. McKAY, Chief Judge.
| Jermaine Lecour appeals his conviction and sentence for violating La. R.S. 14:94(A) relative to the discharge of a firearm where it is foreseeable that it may result in death or great bodily harm to a human being, requesting only a review of the record for errors patent. Finding no errors patent, we affirm Mr. Lecour’s conviction and sentence, and we grant counsel’s motion to withdraw.
*33 On January 28, 2011, the State filed a bill of information charging Jermaine Lec-our with violating La. R.S. 14:94(F), the intentional or criminally negligent discharge of a firearm where it is foreseeable that it may result in death or great bodily harm while committing a crime of violence, to which charge he entered a plea of not guilty on February 18, 2011. A preliminary hearing was conducted on April 13, 2011; the court found sufficient probable cause to bind Mr. Lecour over for trial. A trial held on August 1, 2011, resulted in a mistrial. A second trial commenced on January 23, 2012, and concluded on the second day, January 25, 2012, when the twelve-person jury returned a responsive verdict of guilty of intentional or criminally negligent discharge of a firearm where it was foreseeable that death or great bodily to a human being could result, a violation of La. R.S. 14:94(A). A motion for new trial was filed and then denied by the trial court on [2March 9, 2012. After Mr. Lec-our waived the statutory delay of twenty-four hours, the court sentenced him to serve twenty months in the Department of Corrections.
On June 7, 2013, the trial court granted a motion for an appeal and appointed counsel to represent Mr. Lecour on appeal. The record was lodged on July 26, 2013. The appellant’s brief was filed on September 17, 2013, and the State responded on September 19, 2013.
Jermaine Lecour and Keyoea Adams had at one time been involved in a relationship from which a daughter was born. On December 29, 2010, Ms. Adams arrived at her mother’s home with that daughter, who was then approximately eleven months old, in a car driven by Justin Vi-nette. At that time, Mr. Lecour was a New Orleans police officer; Mr. Vinette was a Tulane University police officer. Although both men were off-duty, they were both in possession of firearms. Within seconds of Mr. Vinette parking his car, Mr. Lecour arrived at the residence and parked his car. Ms. Adams and Mr. Vi-nette stayed in their vehicle for a few minutes, during which time they observed Mr. Lecour go into the residence, remain inside for only a minute or so, and then return to his vehicle. Ms. Adams and Mr. Vinette then got out of Mr. Vinette’s vehicle. Ms. Adams was carrying her daughter and a diaper bag. Mr. Lecour yelled at her to bring him his child, to which Ms. Adams responded that he should wait while she put her things in the house.
As Ms. Adams entered the residence, with Mr. Vinette a few steps behind her, she heard several gunshots. She put her belongings down and went back outside. She saw Mr. Vinette standing in the driveway with his weapon drawn. She saw Mr. Lecour still sitting in his vehicle; he was holding a gun outside the window, pointing it to the ground. Ms. Adams asked what was happening. Mr. |sLecour placed his weapon back inside his vehicle, and Ms. Adams then went over and spoke to him, asking why he was there. After she told him that she did not want to be in the middle of anything, Mr. Lecour drove away from the scene.
Sergeant Tokishiba Lane of the Seventh District responded along with two other officers to the dispatch of shots fired. After she learned that a police officer was involved in the incident, she notified ranking officers. A few minutes after she arrived at the scene, Mr. Lecour arrived, having been called and asked to return by another one of the on-scene police officers. Mr. Lecour surrendered his weapon to Sergeant Lane, as did Mr. Vinette. Both weapons were then secured in the trunk of Sergeant Lane’s vehicle. After that, Sergeant Lane and the other district officers waited for an officer from the Public In *34 tegrity Bureau (“PIB”) to arrive and take over the investigation.
Tarez Cook, a Crime Lab technician, was also called to the scene of the incident. She and other technicians processed the scene, taking photographs and making a sketch. She personally collected three spent casings which were found in the grass near the sidewalk next to where Mr. Lecour’s vehicle had been parked. No other casings were collected.
Detective Walter Zschiedrich, a thirty-eight year veteran with the New Orleans Police Department who was assigned to PIB, handled the investigation on the scene. After speaking with Sergeant Lane, he interviewed Ms. Adams and Mr. Vinette. When the personnel from the Crime Lab arrived, he directed them as to what needed to be done to process the scene. As part of the investigation, Detective Zschiedrich had the area closely examined for any bullet strike marks which would show in what direction any weapons had been fired. As part of that process, the detective requested that a ladder truck from the fire department come |4to the scene. The detective personally climbed the ladder to closely examine a spot on a tree where it appeared a bullet might have struck. However, upon close examination, the detective concluded that there was no strike mark. Also, there was no other evidence found that more than three shots were fired.
Officer Demond Davis of the Seventh District testified at trial that he and Officer Kish were first on the scene, followed immediately by Sergeant Lane. He stated that the brother of Mr. Vinette arrived at the scene at approximately the same time. Mr. Vinette pointed to the three casings on the ground; Officer Kish went to the spot and stayed there to preserve the evidence until the casings could be secured. Officer Davis testified further that he was the one who called Mr. Lecour and told him he should return to the scene. He recountéd that Mr. Lecour told him that the other guy fired a round first, and so he fired a shot to the ground.
Justin Vinette testified at trial that he was with Ms. Adams on the night of the incident because he had some old clothing which he was going to give to Ms. Adams’ cousin. He . picked Ms. Adams up at her mother’s house, and they went to his house, where they stayed for less than an hour. After Ms. Adams had selected the clothes for her cousin, they drove back to the home of Ms. Adams’ mother, which was where Ms. Adams was apparently also living. He described the arrival of Mr. Lecour as Ms. Adams had. He also stated that, as Ms. Adams was about to go in the house, he heard three gunshots. Mr. Vi-nette turned, drew his weapon, and took what he called a “ready gun stance.” He denied ever firing his weapon. He also denied that he or his brother, who was also a Tulane University police officer, tampered with any evidence after Mr. Lecour drove away. Mr. Vinette stated that he called his brother because he was unsuccessful in reaching the 911 operator.
| nJermaine Lecour testified on his own behalf at trial. He stated that Ms. Adams had called him approximately ten minutes before he arrived at her residence. Ms. Adams told him that they needed to talk because she was considering moving to Arizona with his child. He recounted parking his vehicle and going inside the residence; after Ms. Adams’ sister told him that she was not home, he returned to his vehicle to text Ms. Adams, a text which she had admitted receiving.
According to Mr. Lecour, Mr. Vinette had a gun in his hand when he exited his car. Mr. Vinette allegedly went behind a large tree in the yard, at which point he heard two shots. Mr. Lecour, who said he was outside of his vehicle when these shots *35 were fired, returned to his vehicle and retrieved his firearm from the floorboard where he kept it. Because he could not see exactly where Justin Vinette was, Mr. Lecour stated that he fired his weapon upwards toward another tree so that Vi-nette would know that he was armed. He then got into his vehicle and put his gun outside through the window. When he saw Ms. Adams coming out of the house with their child in her arms, he put his weapon back on the floor so that they would not be caught in a cross-fire. Mr. Vinette then ran into the house, and Mr. Lecour drove from the scene towards the Seventh District police station. On his way, he received a phone call from Officer Davis and then returned to the scene.
On rebuttal, Mr. Vinette testified that Ms. Adams did not use her phone during the time they were together that night.
At trial, Meredith Acosta, a firearms examiner for the New Orleans Police Department crime lab testified that she compared the casings recovered from the scene with the firearm, a Ruger nine millimeter, which Sergeant Lane had obtained from Mr. Lecour. She stated that the casings were fired by the Ruger pistol.
RBy his sole assignment of error, Mr. Lecour requests a review of the record for errors patent. Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990). Counsel filed a brief complying with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Counsel’s detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel moved to -withdraw because he believes, after a conscientious review of the record, that there is no non-frivolous issue for appeal. Counsel reviewed the record and found no trial court ruling that arguably supports the appeal. A copy of counsel’s brief was forwarded to Mr. Lecour, and this Court informed him that he had the right to file a brief in his own behalf. He has not done so. Thus, this Court’s review is limited to errors on the face of the record. La.C.Cr.P. art. 920.
As per State v. Benjamin, this Court performed an independent, thorough review of the pleadings, minute entries, and the bill of information in the appeal record. Mr. Lecour was properly charged by bill of information with the intentional or criminally negligent discharge of a firearm where it is foreseeable that it may result in death or great bodily harm while committing a crime of violence, a violation of La. R.S. 14:94(F), and the bill of information was signed by an assistant district attorney. Mr. Lecour was present and represented by counsel at arraignment, during trial, and at sentencing. The jury’s verdict of guilty of the responsive verdict of the intentional or criminally negligent discharge of a firearm where it is foreseeable that it may result in death or great bodily harm (without reference to being in the commission of a crime of violence), a violation of La. R.S. 14:94(A), is legal in all respects, as is Mr. Lecour’s sentence. ^Furthermore, a review of the trial transcript shows that the State provided sufficient evidence to prove beyond a reasonable doubt that Mr. Lecour was guilty of the verdict rendered by the jury.
This Court’s review reveals no patent error and no non-frivolous issue or trial court ruling that supports the appeal. Therefore, we affirm Mr. Lecour’s conviction and sentence. We also grant appellate counsel’s motion to withdraw.
AFFIRMED; COUNSEL’S MOTION TO WITHDRAW IS GRANTED.